UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:15-CV-155-TBR

JAMES RATLIFF                                                                                          PLAINTIFF

v.

JO ANN DE BAUN, ET AL.                                                                          DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court on six pending motions. First, Plaintiff and Defendants filed competing motions for summary judgment. [R. 35; R. 40; R. 42; R. 43.] Second, Plaintiff filed a Motion for Leave to File Excess Pages. [R. 54]. Last, Defendants Donnie Hall, Jr., Mandy Graves, and Ballard County, Kentucky (hereinafter "County Defendants") filed a Motion for Leave to Re-file their Motion to Exclude Plaintiff's Expert Witness, Kevin Minor. [R. 59.] Fully briefed, this matter is now ripe for adjudication. For the reasons stated herein, Defendant De Baun's Motion for Summary Judgment [R. 35] is **GRANTED**, Defendant County Defendants' Motion for Summary Judgment [R. 40] is **GRANTED**, Plaintiff's Motion for Partial Summary Judgment Against De Baun [R. 42] is **DENIED**, Plaintiff's Motion for Partial Summary Judgment Against Hall [R. 43] is **DENIED**, Plaintiff's Motion for Leave to File Excess Pages [R. 54] is **DENIED AS MOOT**, and Defendant County Defendants' Motion for Leave to Re-file their Motion to Exclude Plaintiff's Expert Witness, Kevin Minor [R. 59.] is **DENIED AS MOOT**. The Court will enter a separate Order and Judgment consistent with this Memorandum Opinion.

**BACKGROUND**

On March 17, 2015, Plaintiff James Ratliff was incarcerated in Ballard County Jail ("the Jail"). [R. 35-2 at 10:9-11 (Deposition of Ratliff)]. On May 29, 2015, Deputy Jailer Jo Ann De Baun moved Ratliff and his cellmates to a different cell, the "drunk tank," for approximately two hours while an electrical problem was being addressed in their normal cell. [*Id.* at 19:5-6.] As the inmates left the "drunk tank," Ratliff noticed that De Baun had a stun gun. [*Id.* at 19:18-19.] He then told De Baun that he used to play with similar devices with his brother. [*Id.* at 19:22-23.] De Baun responded that Ratliff would not be able to handle being shocked by her stun gun. [*Id.* at 19:24.] Ratliff disagreed, saying, "Hit me with it," and stuck his arm out for De Baun to "tase"[1] him.[2] [*Id.* at 20:1.] In hindsight, Ratliff testified that he was "[s]howing off in front of the inmates," [*Id.* at 70:14], and he did not think she would actually do it, [*Id.* at 84:18]. Nevertheless, De Baun did in fact "tase" him, causing Ratliff to drop the bedding he was holding and fall to one knee. [*Id.* at 73:3-5.][3] Ratliff testified that the other inmates laughed immediately, [*Id.* at 23:9], but he did not find it comical until they started walking back to their cell, [*Id.* at 72:2-4].

Ratliff testified that later on the same day, May 29, 2015, Deputy Jailer Adam Carpenter shined a laser, either from a laser pointer or from one of the Jail's X26 Tasers, on Ratliff while he was showering. [*Id.* at 74:2-21]. This made Ratliff uneasy because of the incident with De Baun that occurred earlier. [*Id.*]

Ratliff testified that he asked De Baun for medical treatment for the two burns left from the stun gun that evening of May 29, to which she responded, "I'll see what I can do," but she

---

[1] Technically De Baun's device was not a taser, it was a stun gun. However, stun guns are often colloquially referred to as "tasers" and being "tased."
[2] De Baun recalls the incident slightly different in her deposition. De Baun testified that she told Ratliff that he needed to behave correctly or else she would use her stun gun. [R. 64 at 34:13-35:2 (Deposition of De Baun.] She testified that Ratliff then asked to see the device and told her he wanted to feel its effects. [*Id.* at 35:7-19].
[3] Earlier in the deposition Ratliff testified that he "hit the floor," [R. 35-2 at 23:1-5], however, he corrected it later by stating that he dropped to one knee, [*Id.* at 73:3-5].

2

never returned to his cell. [*Id.* at 77:15-21.] Ratliff testified that he asked De Baun the next day for a grievance form on two different occasions to which she responded, "I'll bring it back to you," but never returned.[4] [*Id.* at 78:6-14]. After these attempts, Ratliff asked no one else in the Jail about medical treatment for his arm or a grievance form. [*Id.* at 78:19-22.]

In fact, the incident did not come up again until a couple days afterward when Ratliff asked Carpenter for some antibiotic ointment for his arm, showed him the two marks, and Ratliff explained what happened. [*Id.* at 102:25-103:8.] Ratliff recalls that in response to his retelling of the incident, Carpenter repeatedly told him "You need to think about what you're doing." [*Id.* at 81:11-20.] Ratliff testified that he later told Deputy Jailer Corey Butrum as well, who laughed at Carpenter's statements. [*Id.* at 101:20-102:3.]

Chief Deputy Jailer Lamanda Graves testified Butrum reported the "taser" incident to her the day after it occurred. [R. 42-5 at 23:15-21 (Deposition of Graves).] Then, Graves informed Jailer Donnie Hall, Jr., who was on vacation at the time, [R. 42-6 48:22 (Deposition of Hall)], about the incident via text message. [*Id.* at 44:11-16.] When Hall returned from vacation, he met with De Baun, who admitted that she "tased" an inmate. [*Id.* at 50:23-51:2.] Hall then told De Baun that Kentucky State Police would be investigating the incident and she was terminated from her position at the Jail. [*Id.* at 51:6-7.]

Ratliff initially filed a complaint *pro se* against Graves and Hall on June 29, 2015. [R. 1.] He later filed an amended complaint through counsel on September 17, 2015 against De Baun, Hall, Graves, Ballard County Jail, and Ballard County, Kentucky. [R. 5.] He alleges violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments under § 1983; violations of the Kentucky Constitution sections 10, 11, and 17; violations of KRS 71.020, 71.040, 71.060, 441.025,

---

[4] In contrast, De Baun testified that she never had a conversation with Ratliff about a medical slip or a grievance form. [R. 64 at 98:22-25.]

3

552.030, 520.060; charges of intentional infliction of emotional distress, assault, battery, vicarious liability, and negligence; and asks for an award of punitive damages. [R. 5 at 3-15]. On July 20, 2016, Ballard County Jail was dismissed from the suit as a defendant. [R. 21.] De Baun and Hall, Graves, and Ballard County ( hereinafter "County Defendants") both filed motions for summary judgment, [R. 35 (De Baun's Motion for Summary Judgment); R. 40 (County Defendants' Motion for Summary Judgment], to which Ratliff responded, [R. 51 (Response to County Defendants); R. 52 (Response to De Baun], and both defendants replied [R. 56 (De Baun's Reply); R. 67 (County Defendants' Reply).] Also, Ratliff filed a Partial Motion for Summary Judgment against De Baun, [R. 42], and Hall, [R. 43], to which both defendants responded [R. 44 (De Baun's Response); R. 45 (Hall's Response)], and Ratliff replied, [R. 57 (Reply to Hall); R. 58 (Reply to De Baun)].

## STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law.' " *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

When the parties have filed competing motions for summary judgment, as is the case here, the Court "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Hensley v. Grassman*, 693 F.3d 681, 686 (6th Cir. 2012) (quoting *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994)). The moving party must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of the nonmovant's claim or defense. Fed. R. Civ. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

## DISCUSSION

In their competing motions for summary judgment, the parties dispute several different areas of law, including the Prisoner Litigation Reform Act (PLRA), sovereign immunity, qualified immunity, constitutional claims under 42 U.S.C. § 1983, various state law claims, and punitive damages. Both De Baun and County Defendants submit that summary judgment is appropriate because Ratliff did not exhaust all available remedies before filing his federal claims, as required by the PLRA. [R. 35-1 at 7; R.40-1 at 9.] Ratliff retorts that exhaustion was not necessary because administrative remedies were not actually available to him. [R. 52 at 4; R. 51 at 4.] The Court finds that there were administrative remedies available to Ratliff, yet he did not exhaust them. Consequently, the Court dismisses his federal claims and declines, in its discretion, to exercise supplemental jurisdiction over his remaining state law claims.

I.   **The Prisoner Litigation Reform Act**

The PLRA states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Prisoner Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a) (2013). This statute requires a prisoner to exhaust all available administrative remedies before filing any action "with respect to prison conditions" under 42 U.S.C. § 1983 or any other federal law. *Id*. In order to bring a sharp rise of prisoner litigation in the federal courts under control, Congress fortified the PLRA with provisions like a mandatory requirement of exhaustion, § 1997e(a), and a required showing of physical injury, § 1997e(e). *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). These requirements cultivate a more efficient system in which prisoners have "an effective incentive to make full use of the prison grievance process" and prisons gain "a fair opportunity to correct their own errors." *Id.* at 93-94.

   A.  **Exhaustion Requirement**

The PLRA requires that a prisoner must exhaust all available administrative remedies before he or she may bring a federal action related to prison conditions. 42 U.S.C. § 1997e(a) (2013). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *accord Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999). To properly exhaust administrative remedies, the prisoner must comply with the deadlines and procedures of the specific prison involved. *See Woodford* 548 U.S. at 90; *Jones v. Bock*, 549 U.S. 199, 218 (2007); *accord Lee v. Wiley*, 789 F.3d 673, 677 (6th Cir. 2015). Under the PLRA, the prisoner's failure to exhaust available, administrative remedies prior to

6

filing suit is an affirmative defense, and, therefore, the defendants bear the burden of proof on exhaustion. *See Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (citing *Bock*, 549 U.S. at 1216); *Napier v. Laurel Cty.*, 636 F.3d 218, 255 (6th Cir. 2011).

As both De Baun and the County Defendants argue for summary judgment on these grounds, the Court will address their motions together. Here, De Baun and the County Defendants are entitled to summary judgment because they have shown that Ratliff failed to exhaust the established grievance procedures in place at the Jail. The Jail's grievance procedure clearly states that in order to file a complaint regarding a condition of the prisoner's confinement, the prisoner must "[a]ttempt to alleviate the problem through verbal communication with the person he believes is responsible for the condition. If that person does not alleviate his concern, then he may request an Inmate Grievance Form." [R. 40-7, Ex. F (Grievance Policy).] The prisoner must then "[c]omplete and submit a written grievance to the Chief Deputy, within five (5) calendar days of the incident about which he is complaining." [*Id.*] It is undisputed by all parties that Ratliff failed to complete and submit a written grievance form as required by the Jail's grievance procedure. Specifically, Ratliff claims that he asked De Baun for a grievance form more than once but she never retrieved one for him. [R. 35-2 at 78:6-14.] The Sixth Circuit previously addressed situations similar to the one at hand and dismissed the complaints of those prisoners. *See Lyle v. Jackson*, 49 F. App'x 492 (6th Cir. 2002); *Martin v. Johnson*, 72 F. App'x 256, 257-58 (6th Cir. 2003) (holding that a prisoner's allegation that he requested a grievance form but did not receive one is insufficient to establish exhaustion); *Anderson v. Meeks*, 79 F. App'x 113, 114 (6th Cir. 2003) (holding that it is insufficient to claim grievance forms were denied to excuse exhaustion and that a prisoner must attempt to file a grievance without a form) (citing *Jones v. Smith*, 266 F.3d 399 (6th Cir. 2001); *Jones v. Smith*, 266 F.3d at 400 (holding

7

that an inmate failed to exhaust administrative remedies when he did not make another attempt to obtain a grievance form after his correction counselor declined his request).

In *Lyle v. Jackson*, a prisoner failed to file a grievance but argued that he requested and was denied a grievance form. 49 F. App'x at 494. Furthermore, the inmate claimed that he also requested a grievance form from the prison's law library but received no response. *Id*. The Sixth Circuit upheld the dismissal of the inmate's claim because the inmate did not document his request to the library nor did he attempt to file his grievance without a form. *Id*. (citing *Jones*, 266 F.3d at 400). Similar to the inmate in *Lyle*, there is no evidence in Ratliff's deposition testimony of any further efforts to obtain a grievance form or to file a grievance without a form. Therefore, the Court finds that Ratliff asking De Baun for a grievance form multiple times was not sufficient to exhaust the administrative remedies that were available to him.

### B. Availability of Administrative Remedies

Ratliff attempts to circumvent this Sixth Circuit precedent by arguing that he did not have to meet the exhaustion requirement because the necessary administrative remedies were not available to him. [R. 52 (quoting *Ross v. Blake*, 136 S.Ct. 1850, 1853-54 (2016)).] In *Ross v. Blake*, the United States Supreme Court described a textual exception to mandatory exhaustion that hinges on the "availab[ility]" of administrative remedies. *See Ross*, 136 S.Ct. at 1858 (citing § 1997e(a)). The Supreme Court described three circumstances where an administrative remedy is not "capable of use to obtain relief":

> First . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. . . . Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. . . . And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

8

*Id*. at 1859-60 (citations omitted). Ratliff argues each of these three exceptions applied to his case in turn. Although the Sixth Circuit precedent previously mentioned establishes that a situation in which an inmate asks but does not receive a grievance does not result in exhaustion, the Court will address Ratliff's arguments under these three exceptions out of an abundance of caution.

### 1. Officers Unwilling to Provide Relief

Ratliff states that De Baun, Butrum, Armstrong, and Lieutenant Harvell were all unable or unwilling to address Ratliff's need to file a grievance. [R. 52 at 5-8.] Specifically, Ratliff recounts that he verbally asked De Baun for a grievance form and medical assistance three times over two days. [R. 35-2 at 14:13.] In response to his request for a grievance form, De Baun responded "I will bring it back to you," but failed to follow through. [*Id*. at 78:11-14]. The Court is unpersuaded that this interaction amounts to De Baun being "consistently unwilling to provide any relief" to Ratliff as explained in *Ross*. 130 S. Ct. at 1859. Indeed, this incident falls short of the examples given in *Ross*, such as an administrative office disclaiming the capacity to consider grievances or an administrative official outright declining to exercise authority. *Id*. Furthermore, Ratliff admitted in his deposition that he never had a problem acquiring a grievance form in the past. [R. 35-2 at 80:13-15.]

The Sixth Circuit addressed a similar issue in *Surles v. Andison*,[5] in which it held that summary judgment for failure to exhaust administrative remedies was not warranted. 678 F.3d at

---

[5] Though, *Surles* does not cite *Ross* because *Surles* was published four years before it in 2012. However, even post-*Ross*, many courts require more action from an inmate than merely asking for a grievance form in order to deny summary judgment on exhaustion grounds. *See, e.g., Smith v. Carter*, No. 5:16-CT-3194-FL, 2017 WL 2274969, at *2 (E.D.N.C. May 24, 2017) (denying summary judgment based on failure to exhaust remedies when inmate submitted multiple grievances that were ignored); *Weatherspoon v. Choi*, No. 1:14-CV-707, 2016 WL 4035322, at *1-2 (W.D. Mich. July 28, 2016) (denying summary judgment when inmate presented evidence establishing that he requested grievance forms but prison officials refused to provide them); *Drewry v. Maine*, No. 1:16-CV-00075-GZS, 2016 WL 4082625, at *3 (D. Me. July 29, 2016) (denying summary judgment after inmate signed and dated declaration that he filed an informal grievance but it was ignored).

458. However, in that case, the inmate attempted to file grievances but an agent "refused to file or process those grievances." *Id*. at 457. Furthermore, the defendants in the case prevented the inmate from re-filing grievances in a later stage of the grievance process. *Id*. The defendants presented no proof that they did not interfere with the inmate's ability to exhaust his administrative remedies, leaving the Sixth Circuit little choice but to rule in favor of the inmate. *Id*. Here, De Baun said she would retrieve Ratliff a grievance form but failed to actually follow through on the request. Without evidence that a jail official was actually "consistently unwilling" to aid Ratliff, as the inmate in *Surles* presented, this falls short of an administrative "dead end." Furthermore, as mentioned by De Baun and County Defendants, Ratliff concedes that he had many opportunities to request a grievance form from other deputy jailers but did not do so. [R. 35-2 at 79-80.][6]

Ratliff quotes the expert testimony of Dr. Kevin Minor in arguing that the Ballard County Jail's grievance policy does not explain what a prisoner is to do if a request is not met. [R. 52 at 7 (quoting R. 28-1 at 12, (Report of Kevin Minor)).] He also argues that "some inmates could interpret placing multiple requests with multiple staff as constituting potential basis for being accused of attempting to manipulate or disrespect staff." [*Id*.] Assuming that the opinion of Dr. Minor is admissible, there is no deposition testimony from Ratliff indicating that either of these statements is applicable to him in the case at hand.

In addition, Ratliff discussed the incident with Butrum, Armstrong, and Harvell, however, he never asked any of them for a grievance form. [R. 52 at 7-8.] It is impossible for a guard to file a grievance form that was never requested in the first place.[7]

---

[6] In fact, Ratliff admitted that deputy jailers, other than De Baun, walked by his cell once every hour. [R. 35-2 at 83:20-25.]
[7] Ratliff also argues that Harvell failed to follow the appropriate procedures following the use of an X26 Taser, as explained in the portions of the Ballard County Policy and Procedures Manual. However, as clarified by County

In summary, through the evidence that Ratliff was never consistently denied a grievance form, De Baun and County Defendants proved that the Jail's grievance procedure is not a "dead end."

### 2. Opaque Administrative Scheme

Ratliff argues that the Jail's Grievance Policy is so opaque that it should no longer be considered available to inmates. [R. 52 at 8.] Although it is possible that Ratliff may have been confused about the policy, his testimony on the matter contradicts the notion that the procedure was opaque. First, Ratliff displayed his grasp of the procedure by requesting and receiving a grievance form on March 28, 2015 (two months before the "taser" incident) after an argument with Deputy Butrum, [R.35-3 at 1], and by filing a grievance form for a different occurrence a month after the incident, [R. 35-2 at 80]. Furthermore, Ratliff testified that he knew how to file a grievance.[8] [*Id*. at 81.] Clearly, this administrative scheme was not so opaque that it was "incapable of use," as required by the Supreme Court in *Ross*. 136 S.Ct. at 1859.

Secondly, Ratliff claims that, at the very least, the grievance policy was not clear as to the difference between a formal, written grievance and an informal, oral complaint. [R. 51 at 12.] In his deposition, Ratliff contradicted himself both in discussing whether he understood the difference between an oral complaint and a written grievance, [R. 35-2 at 104; *contra* R. 35-2 at 111-12], as well as the missing connection between his verbal complaint and the appearance of the Kentucky State Police, [R. 35-2 at 87; *contra* R. 35-2 at 113]. Overall, the one fact that

---

Defendants and De Baun, this incident did not involve an X26 Taser. It involved a stun gun, which is a different device (it does not have probes that penetrate the skin). [*See* R. 53-2 at 150; R. 35-5 at 2-3(Excerpts from Hall's Deposition).] Therefore, the guidelines for removing taser probes found in the Manual, [R. 51-8 at 67(Policy and Procedures Manual)], would not apply to this situation.

[8] In the same deposition, Ratliff answered "No" to the question of "Are you familiar with how to—with the grievance policies at the Ballard County Jail?" [R. 35-2 at 26:12-14.] However, the fact that Ratliff filed a grievance over a year before his deposition (June 25, 2015) for denial of religious services, [R. 35-2 at 80-81], proves Ratliff's answer to be false.

remains clear is that the policy was not so opaque as to prevent Ratliff from utilizing the grievance system before or after the incident with De Baun.[9]

Lastly, Ratliff argues that the administrative scheme was opaque because no authority from the Jail ever explained the grievance process to the inmates. [R. 51 at 10.] However, there was information posted on the wall concerning inmates' rights which explained that prisoners could file grievances. [R. 51 at 12.] Assumedly, this is what inspired Ratliff to successfully file a grievance on June 25, 2015, [R. 35-2 at 80], along with the advice of other inmates who had also filed grievances, [R. 35-2 at 61].

To summarize, De Baun and County Defendants have proven that the grievance policy at the Jail is not an opaque administrative scheme.

### 3. Thwarted Through Intimidation or Misrepresentation

Ratliff claims that there were efforts to thwart his attempts to address the incident with De Baun both through intimidation and misrepresentation. [R. 51 at 15-17.] In support of his argument that he was subject to intimidation, Ratliff recounts two incidents involving Deputy Jailer Carpenter: one in which Carpenter shined a laser pointer off his taser at Ratliff while he was in the shower, [*Id*.at 15-16], and another occurrence in which Carpenter repeatedly said "You need to think about what you're doing," to Ratliff after Ratliff told him about the incident with De Baun, [R. 35-2 at 81:11-20]. Although it is within the realm of possibility that Carpenter could have been attempting to intimidate Ratliff, there is no deposition testimony from Ratliff in which he makes a connection between these two incidents and his failure to file a grievance. Furthermore, although it has not been thoroughly explored in the Sixth Circuit, the actions here

---

[9] Ratliff also argues that it would not have made a difference in the outcome even if he had been able to file a grievance. [R. 51 at 14]; [R. 52 at 13]. The Sixth Circuit has firmly rejected such futility arguments. *See Napier*, 636 F.3d at 222 (stating that exhaustion is required "even where [the prisoners] believe the procedure to be ineffectual or futile") (quoting *Pack v. Martin*, 174 F. App'x 256, 262 (6th Cir. 2006)).

fall short of the type of intimidation normally discussed in this context. *See generally McBride v. Lopez*, 807 F.3d 982, 988 (9th Cir. 2015) (holding that the plaintiff failed to demonstrate the prison's grievance system was rendered unavailable even though he was beaten by guards and told that he was lucky because his injuries could have been much worse); *Tuckel v. Grover*, 660 F.3d 1249, 1255 (10th Cir. 2011) (holding that the prison's grievance system was rendered unavailable when a prison official instructed inmates to attack the plaintiff after he filed a grievance).

Ratliff also claims misrepresentation occurred when Graves refused to certify some documents for him. [R. 51 at 16-17.][10] It is not clear what exactly these documents were in reference to, but the Court will assume they were for this law suit. The Court is unpersuaded by this accusation of obstructionist behavior for two reasons: First, it does not appear that these documents were actually a part of Ratliff's grievance or the grievance process, which is the main concern of the exhaustion requirement at hand. Second, even if these documents did concern Ratliff's grievance, Graves still helped him by telling Ratliff what documents he needed and where to get them notarized. [R. 42-5 at 29:6-10.][11] Therefore, De Baun and County Defendants have proven that nobody thwarted Ratliff's attempts to file a grievance through intimidation or misrepresentation.

In conclusion, De Baun and County Defendants have satisfied their burden of proof on the matter of exhaustion of administrative remedies. Furthermore, the Court holds that the administrative remedies were available to Ratliff at the Jail through the grievance policy.

### C. Requirement of Physical Injury

---

[10] Technically, Ratliff used the term "obstructionist behavior," however, the Court labels the argument as an accusation that Graves misrepresented to Ratliff that she could not help him.
[11] After telling Ratliff that it would "look bad upon you and me" for her to personally notarize the forms involving the law suit, Graves testified that she "did advise him how he could go about getting those documents and how we could get them notarized for him." [R.42-5 at 29:8-10.]

The PLRA states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e) (2013). § 1997e(e) thereby precludes Eighth Amendment claims for monetary relief absent a showing of a physical injury that is more than *de minimis*. *See Jarriett v. Wilson*, 162 F. App'x 394, 401 (6th Cir. 2005); *Adams v. Rockafellow*, 66 F. App'x 584, 586 (6th Cir. 2003) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)); *Jennings v. Weberg*, No. 2:06-CV-235, 2007 WL 80875, at *3 (W.D. Mich. Jan. 8, 2007) (collecting cases). Although the Sixth Circuit has never defined a *de minimis* injury, there is enough case law on point for the Court to hold that the two burn marks on Ratliff's arm fall short of being greater than a *de minimis* injury. *Compare Jarriett*, 162 F. App'x at 400 (holding that it was a *de minimis* injury when a prisoner complained of a swollen leg, pain when standing, and cramps in his thighs), *and Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (finding that being sprayed with pepper spray was a *de minimis* injury), *and* Corsetti *v. Tessmer*, 41 F. App'x 753, 755 (6th Cir. 2002) (holding that two small bruises and minor cuts were clearly *de minimis*), *with Armer v. Marshall*, No. 5:09-CV-00086, 2011 WL 2580359, at *7, (W.D. KY June 28, 2011) (stating that dislodging one's knee from the socket would undoubtedly be more than a *de minimis* injury). Furthermore, Ratliff testified that he has no physical injuries due to the incident with De Baun, [R. 35-2 at 95:5-13], and described the injury as "not significant," [R. 51 at 22]. Therefore, Ratliff's claim is precluded under § 1997e(e) as a *de minimis* injury.

Ratliff also argues that an insignificant injury is still actionable under the Eighth Amendment if excessive force was used in inflicting that injury. [R. 51 at 17 (citing *Foulk v. Charrier*, 262 F.3d 687, 701 (8th Cir. 2001)).] County Defendants reply that this reliance on

14

*Foulk* is flawed due to the fact that *Foulk*'s discussion of de minimis force is not in relation to § 1997e(e) and, therefore, not relevant to the case at hand. [R. 67 at 7.] The Court agrees with County Defendants. The Eighth Circuit discusses *de minimis* force in *Foulk* in deciding whether "the district court erred in instructing the jury that they could award nominal damages," not in relation to the injury requirement of § 1997e(e). 262 F. 3d at 700. In fact, although the Eighth Circuit discusses other sections within the statute, § 1997e(e) is never mentioned in the opinion. In sum, Ratliff has not met the physical injury requirement under § 1997e(e), therefore, his claim under the Eighth Amendment is precluded, in addition to being barred by 42 U.S.C. § 1997e(a).

In conclusion, the Court finds that Ratliff has not exhausted all of his available administrative remedies as 42 U.S.C. § 1997e(a) requires, nor does he qualify for the exceptions detailed by the Supreme Court in *Ross v. Blake*. Furthermore, Ratliff's injury was *de minimis*. Therefore, Ratliff's federal claims are barred and his Eighth Amendment claim is additionally precluded by 42 U.S.C. § 1997e(e).

## II. Ratliff's State Claims

Having dismissed Ratliff's federal claims, the Court declines to exercise supplemental jurisdiction over his various state law claims. *See* 28 U.S.C. § 1367(c)(3); *Wee Care Child Ctr., Inc. v. Lumpkin*, 680 F.3d 841, 849 (6th Cir. 2012); *see also* 13D Charles Alan Wright et al., *Federal Practice and Procedure* § 3567.3 (3d ed.), Westlaw (database updated April 2016) ("As a general matter, a court will decline supplemental jurisdiction if the underlying claims are dismissed before trial."). "When, as here, 'all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims.' " *Booker v. City of Beachwood*, 451 F. App'x 521, 523 (6th Cir. 2011) (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996), amended on denial of reh'g, No. 95-5120,

15

1998 WL 117980 (6th Cir. Jan. 15, 1998)). Accordingly, the Court will dismiss Ratliff's state law claims without prejudice.

### III. Ratliff's Motions for Partial Summary Judgment

As Ratliff's claims are barred under the PLRA and the Court has declined to exercise supplemental jurisdiction over his various state law claims, Ratliff's Motions for Summary Judgment against De Baun [R. 42] and Donnie Hall Jr. [R. 43] are consequently denied.

### IV. Ratliff's Motion for Leave to File Excess Pages

As explained above, the Court finds that Ratliff's federal claims are barred under the PLRA and the Court declines to exercise supplemental jurisdiction over his various state law claims. Therefore, leave to file excess pages is unnecessary at this point and Ratliff's motion, [R. 54], is denied as moot

### V. County Defendants' Motion for Leave to Re-file their Motion to Exclude Plaintiff's Expert Witness

Even with considering Kevin Minor's expert testimony, the Court found in favor of County Defendants. Therefore, County Defendants' motion, [R. 59], is denied as moot.

### CONCLUSION

For the reasons stated herein, Defendant De Baun's Motion for Summary Judgment [R. 35] is **GRANTED**, Defendant County Defendants' Motion for Summary Judgment [R. 40] is **GRANTED**, Plaintiff's Motion for Partial Summary Judgment Against De Baun [R. 42] is **DENIED**, Plaintiff's Motion for Partial Summary Judgment Against Hall [R. 43] is **DENIED**, Plaintiff's Motion for Leave to File Excess Pages [R. 54] is **DENIED AS MOOT**, and Defendant County Defendants' Motion for Leave to Re-file their Motion to Exclude Plaintiff's Expert Witness, Kevin Minor [R. 59.] is **DENIED AS MOOT**.

cc: Counsel