JAMES RATLIFF                                                                              PLAINTIFF

v.

JO ANN DE BAUN, ET AL.                                                                DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff James Ratliff's Motion to Alter, Amend, or Vacate. [R. 98.] Defendant Jo Ann De Baun responded. [R. 99.] Defendants Donnie Hall, Jr., Mandy Graves, and Ballard County, Kentucky ("County Defendants") also responded. [R. 100.] This matter is now ripe for adjudication. For the reasons stated herein, Plaintiff Ratliff's Motion to Alter, Amend, or Vacate, [R. 98], is **DENIED**.

**BACKGROUND**

The general facts and procedural history of this case are set out in the Court's prior Memorandum Opinion, [R. 96]. In short, Ratliff's claims against the defendants arise out of an incident in which Deputy Jailer JoAnn De Baun used a stun gun on Ratliff while he was incarcerated at Ballard County Jail. [R. 35-2 at 4, 10:9-11 (Ratliff Depo.); *see also* R. 96 at 2.] On September 29, 2017, the Court granted De Baun's Motion for Summary Judgment, [R. 35], and granted the Motion for Summary Judgment by County Defendants, [R. 40]. On October 27, 2017, Ratliff filed a Motion to Alter, Amend, or Vacate the Court's Order of September 29, 2017, [R. 98], which is currently before the Court.

**STANDARD**

"A court may grant a Rule 59(e) motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to

1

prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (*citing GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).

"A motion under Rule 59(e) is not intended to be utilized to relitigate issues previously considered." *Foreman v. United States*, 2012 U.S. Dist. LEXIS 187012 *3 (W.D. Mich. 2012) (citing *Equal Emp't Opportunity Comm'n v. Argent Indus., Inc.*, 746 F. Supp. 705, 706 (S.D. Ohio 1989)). "Neither should it be used as a vehicle for submitting evidence which in the exercise of reasonable diligence could have been submitted before." *Id*. (citing *Weyerhaeuser Corp. v. Koppers Co.*, 771 F. Supp. 1406, 1419 (D. Md. 1991)).

"The grant or denial of a Rule 59(e) motion is within the informed discretion of the district court, reversible only for abuse." *Huff v. Metro. Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982).

## DISCUSSION

Ratliff moves to alter, amend, or vacate the Court's order entered on September 29, 2017, [R. 98], on three different grounds. First, Ratliff argues that exhaustion of administrative remedies was not necessary because "the grievance process was effectively rendered unavailable to him." [R. 98-1 at 4.] Second, Ratliff asserts that Defendants "should be estopped from asserting the defense of failure to exhaust administrative remedies." [*Id*. at 6.] Third, Ratliff argues that "the Court made factual determinations that should have been made by a jury." [*Id*.] The Court will address each in turn.

As an initial matter, the Court notes that, despite the requirements of Rule 59(e), Ratliff does not once contend that there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or that his Motion must be granted to prevent manifest injustice.

## I. Exhaustion of Administrative Remedies

The PLRA states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Prisoner Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a) (2013). This statute requires a prisoner to exhaust all available administrative remedies before filing any action "with respect to prison conditions" under 42 U.S.C. § 1983 or any other federal law. *Id*. In order to bring a sharp rise of prisoner litigation in the federal courts under control, Congress fortified the PLRA with provisions like a mandatory requirement of exhaustion, § 1997e(a), and a required showing of physical injury, § 1997e(e). *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

As the Court explained in its Memorandum Opinion, the United States Supreme Court described a textual exception to mandatory exhaustion that hinges on the "availab[ility]" of administrative remedies in the case of *Ross v. Blake*. *See Ross*, 136 S.Ct. 1850, 1858 (2016) (citing § 1997e(a)). The Supreme Court described three circumstances where an administrative remedy is not "capable of use to obtain relief":

> First . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. . . . Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. . . . And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

*Id*. at 1859-60 (citations omitted).

Citing Tenth Circuit case law as support, Ratliff argues that he was not required to exhaust his administrative remedies because they were not available to him due to intimidation. [R. 98-1 at 2-4.] The defendants respond with three different arguments: (1) Tenth Circuit case

3

law is not binding on this Court, (2) the Court already held in its Memorandum Opinion that the procedure was not unavailable to Ratliff, and (3) Ratliff fails to argue against the Court's holding in its Memorandum Opinion that Ratliff's injury was de minimis. [R. 100 at 3-5; 7; R. 99 at 2.] The Court agrees with the defendants.

First, Ratliff cites two showings required by the Tenth Circuit in order to establish that an act of intimidation deterred the plaintiff inmate from lodging a grievance. [R. 98-1 at 2.] The Court notes that Tenth Circuit case law is not binding on its decision. Furthermore, Ratliff never attempts to establish either of these requirements of the Tenth Circuit, rendering his use of the case unpersuasive.

Second, Ratliff presents no new arguments to support the assertion that prison administrators thwarted Ratliff from taking advantage of the grievance process through intimidation. He cites to three quotes from Ratliff's deposition in support—two of which were used in the argument in his Response to the County Defendants' Motion for Summary Judgment. [*See* R. 51 at 15-16.] The quote that was not used in his original argument appears to be in support of a claim that the administrative process operated as a dead end, rather than a claim of intimidation. In the quote, Ratliff testified that he did not think it mattered if he submitted a grievance to one of the other guards because they all worked with De Baun—implying that they never would have submitted the grievance out of loyalty to De Baun. [R. 98-1 at 4.] With no case law and little explanation in support, Ratliff follows this passage with the conclusory statement: "[T]here was little reason for him to think that they either would do anything to help him. In short, the grievance process was effectively rendered unavailable to him." [*Id.*] As the Court previously stated in its Memorandum Opinion, "[w]ithout evidence that a jail official was actually 'consistently unwilling' to aid Ratliff, as the inmate in *Surles* presented, this falls short

of an administrative 'dead end.'" [R. 96 at 10 (citing *Surles v. Andison*, 678 F.3d 452, 457 (6th Cir. 2012)).] Thus, the Court still finds Ratliff's argument unpersuasive.

Third, even if Ratliff could successfully argue that the grievance process was unavailable to him, the Court previously held that he failed to meet the physical injury requirement under the PLRA. [*See* R. 96 at 14.] The PLRA states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e) (2013). § 1997e(e) thereby precludes Eighth Amendment claims for monetary relief absent a showing of a physical injury that is more than de minimis. *See Jarriett v. Wilson*, 162 F. App'x 394, 401 (6th Cir. 2005); *Adams v. Rockafellow*, 66 F. App'x 584, 586 (6th Cir. 2003) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)); *Jennings v. Weberg*, No. 2:06-CV-235, 2007 WL 80875, at *3 (W.D. Mich. Jan. 8, 2007) (collecting cases). In his Motion to Alter, Amend, or Vacate, Ratliff does not address the fact that the Court held that his injury was de minimis, thereby precluding his claim pursuant to 42 U.S.C. § 1997e(e), [*see* R. 96 at 13-15]. With no further argument from Ratliff, his PLRA claim remains precluded due to his failure to show a physical injury that is more than de minimis.

In short, the Court does not find that there is "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp.*, 428 F.3d at 620. Thus, Ratliff's Motion as it pertains to this claim is DENIED.

## II. Equitable Estoppel

Ratliff argues that the defendants "should not be allowed to assert the failure to exhaust administrative remedies as a defense on the grounds of equitable estoppel." [R. 98-1 at 4-6.] The

defendants respond that this argument should fail for three reasons: (1) Ratliff did not raise this argument previously, (2) the Sixth Circuit has not published an opinion on whether equitable estoppel may be applied when a correctional defendant asserts failure to exhaust as a defense, and (3) even if it were applicable, Ratliff fails to establish the required elements for estoppel. [*See* R. 100 at 5-7; R. 99 at 2.] The Court agrees with the defendants.

First, the Court notes that Ratliff did not raise this equitable estoppel argument before the Court ruled on the motions for summary judgment. "A plaintiff cannot use a Rule 59 motion . . . 'to raise arguments which could, and should, have been made before judgment issued.'" *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 616 (6th Cir. 2010) (quoting *Sault Ste. Marie Tribe of Chippewa Indians v. Engler,* 146 F.3d 367, 374 (6th Cir. 1998)). Ratliff did not assert equitable estoppel in his Response to the motions for summary judgment. [*See generally* R. 51]. Thus, he may not raise that argument now.

Even if Ratliff could assert equitable estoppel, the claim would still fail. As an initial matter, the Court notes that the Sixth Circuit has yet to decide whether a defendant's actions that inhibit an inmate's exhaustion of remedies may estop that defendant from raising the inmate's failure to exhaust as a defense. Presumably, this is why Ratliff only cites to Second Circuit case law for support. [R. 98-1 at 4-5.] Moreover, Ratliff fails to assert the elements required to prove estoppel or explain how he has met those elements. "Equitable estoppel occurs when (1) the party against whom estoppel is asserted makes a misrepresentation, (2) the party asserting estoppel acts in reasonable reliance on the misrepresentation, (3) the party asserting estoppel suffers a detriment, and (4) when asserted against the government, there is a showing of affirmative misconduct on the part of the government." *Buckner v. United States*, No. 4:13-CV-02469, 2015 WL 5023079, at *5 (N.D. Ohio July 1, 2015), report and recommendation adopted,

No. 4:13CV2469, 2015 WL 5023069 (N.D. Ohio Aug. 21, 2015) (citing *Michigan Express, Inc. v. United States,* 374 F.3d 424, 427 (6th Cir. 2004)). Ratliff lists twelve instances in which "defendants did as much as they could to thwart Mr. Ratliff from filing a grievance." [R. 98-1 at 5-6.] However, Ratliff fails to argue that the defendants ever made a misrepresentation to Ratliff or that he ever relied on such misrepresentation. Thus, Ratliff's argument that the defendants should be estopped from asserting the failure to exhaust defense must fail.

In sum, the Court does not find that there is "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp.*, 428 F.3d at 620. Thus, Ratliff's Motion as it pertains to this claim is DENIED.

### III. Factual Determinations

Ratliff asserts that "the Court made numerous factual determinations that were more appropriate for a jury." [R. 98-1 at 6.] It is true that the Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). However, "the Court's duty to view the facts in the light most favorable to the nonmovant does not require or permit the court to accept mere allegations that are not supported by factual evidence." *Chappell v. City of Cleveland,* 585 F.3d 901, 906 (6th Cir. 2009) (citing *Leary v. Livingston Cnty.,* 528 F.3d 438, 443–44 (6th Cir. 2008)). Ratliff points to six selections from the Court's Memorandum Opinion with little to no explanation, no case law in support of his argument, and no citation as to the location of these alleged violations in the Court's Memorandum Opinion. The Court will address each instance in turn.

First, Ratliff contests the Court's statement that "the Jail's grievance procedure clearly states . . .." [R. 98-1 at 6.] Ratliff argues "[t]hat statement is contradicted by the testimony of both James Ratliff and Joann De Baun. The Court itself stated, elsewhere in the opinion that, 'although it is possible that Ratliff may have been confused about the policy. . ..'" [*Id.*] It appears that Ratliff opposes the Court's use of the word "clearly." Without further explanation, the Court is not certain as to how this amounts to a factual determination. However, even if it did constitute a factual determination, it would not affect the Court's holding that Ratliff failed to exhaust the administrative exhaustive remedies that were available to him because Ratliff never presented evidence of further attempts to obtain a grievance or to file a grievance without a form. [*See* R. 96 at 8 (citing *Lyle v. Jackson*, 49 F. App'x 492, 494 (6th Cir. 2002).]

Second, Ratliff claims that "the Court chose to overlook the opinion of Dr. Kevin Minor on the issue of exhaustion of administrative remedies." [R. 98-1 at 6.] Again, it is unclear how this amounts to a factual determination, and Ratliff does not explain any further. Furthermore, the Court discussed the testimony of Dr. Minor on page ten of its Memorandum Opinion. [R. 96 at 10.] Thus, the Court finds that it did not overlook the testimony of Dr. Minor.

Third, Ratliff argues that the Court made a factual determination "regarding the appropriate aftercare procedure to be used following a Taser incident." [R. 98-1 at 6.] It is undisputed that De Baun used her personal stun gun on Ratliff, not an X26 Taser. [R. 5 at 2, ¶ 11-12 (Amended Complaint) ("Mandy Graves, Ballard County Chief Deputy Jailer, allowed Joann De Baun, Ballard County Deputy Jailer, to bring a stun gun into the jail. On or about May 29, 2015, Joann De Baun, Ballard County Deputy Jailer, used a stun gun on James Ratliff."); R. 42-4 at 8 (De Baun Depo.).] Furthermore, neither party disputes that an X26 Taser differs from a stun gun in that an X26 Taser has prongs that penetrate the skin. [*See* R. 53-2 at 150 (Minor

8

Depo.); R. 35-5 at 2-3 9 (Excerpts from Hall Depo.).] Specifically, the Court stated that "the guidelines *for removing taser probes* found in the Manual, [R. 51-8 at 67(Policy and Procedures Manual)], would not apply to this situation." [R. 96 at 11 n.7.] The Court did not make a factual determination about the aftercare procedure as a whole. Rather, the Court found that it would be unnecessary for the probes of an X26 Taser to be removed from Ratliff's skin because the stun gun used by De Baun does not contain such probes. Neither party disputed that De Baun's stun gun did not contain probes, nor has Ratliff presented evidence suggesting otherwise. Thus, the Court stands by its original finding on the matter.

Fourth, Ratliff states that the Court made a credibility determination when it held a statement by Ratliff in his deposition to be false.[1] [R. 98-1 at 6.] The Court agrees. The Sixth Circuit has stated that, at the summary judgment stage, a court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). Even though "[a] contradiction by the *same* [party] in the *same* deposition raises serious credibility concerns," *Peck v. Elyria Foundry Co.*, 347 F. App'x 139, 146 (6th Cir. 2009), the Court should not make credibility determinations. However, this does not affect the Court's holding as Ratliff still failed to establish that the policy was "incapable of use" or that it was "so confusing that . . . no reasonable prisoner can use [it]." *Ross*, 136 S.Ct. at 1859. On June 25, 2015, Ratliff filed a grievance form claiming that an officer violated his "right to religious freedom." [R. 40-8 (Grievance).] Clearly, the policy was not so opaque as to prevent Ratliff from

---

[1] Specifically, the Court stated: "In the same deposition, Ratliff answered "No" to the question of "Are you familiar with how to—with the grievance policies at the Ballard County Jail?" [R. 35-2 at 26:12-14.] However, the fact that Ratliff filed a grievance over a year before his deposition (June 25, 2015) for denial of religious services, [R. 35-2 at 80-81], proves Ratliff's answer to be false." [R. 96 at 11 n.8.]

9

successfully filing a grievance one month after the incident with De Baun. Thus, the Court stands by its initial reasoning.

Fifth, Ratliff merely states: "Fifth, the Court notes, '. . . it is within the realm of possibility that Carpenter could have been attempting to intimidate Ratliff. ..'" [R. 98-1 at 6.] Without further explanation, it is unclear as to what Ratliff is attempting to argue. Therefore, the Court will disregard this statement.

Finally, in the sixth instance highlighted by Ratliff, he argues that "the Court inferred that Ratliff knew how to use the procedure because of other times that he had used the procedure," but "the Court could have instead inferred that Mr. Ratliff did not use the procedure because he was intimidated." [R. 98-1 at 6.] The Court disagrees. Ratliff provided no evidence to establish that he chose not to file a grievance specifically because he felt intimidated. Similarly, the Sixth Circuit held in *Green v. Haverstick* that a prisoner was not prevented from accessing the grievance process when the prisoner was able to file a grievance subsequent to a prison employee refusing to accept and mail a grievance. *Green*, No. 16-2523, 2017 WL 5171244, at *2 (6th Cir. Aug. 30, 2017). Furthermore, the Court need not infer that Ratliff knew how to use the procedure because Ratliff testified that he did:

> Q. You were being denied religious services.
>    Okay. So you knew how to file a grievance.
> A. Yeah.

[R. 35-2 at 21, 81:8-10.]. Thus, the Court stands by its original reasoning.

In sum, the Court does not find that there is "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp.*, 428 F.3d at 620. Thus, Ratliff's Motion as it pertains to this claim is DENIED.

## CONCLUSION

For the foregoing reasons, Plaintiff Ratliff's Motion to Alter, Amend, or Vacate, [R. 98], is **DENIED**.

**IT IS SO ORDERED**.


cc: Counsel